IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.   Case Nos.:   3:11cr37/LAC
                   3:13cv57LAC/EMT

ANTHONY MARTIZ WHITEHURST, JR.

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 356). The Government has filed a response (doc. 359), and Defendant was provided with specific instruction regarding the content of his reply (doc. 360). He has now filed a reply (doc. 362). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that the issues raised herein may be resolved without the need for an evidentiary hearing and that Defendant's § 2255 motion should be denied. *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant was charged in a two-count indictment with conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count I) and possession with intent to distribute crack cocaine on a date certain (Count II) (doc. 109). Defendant, who was represented by appointed counsel Shelley Guy Reynolds, entered a plea of guilty as charged (doc. 168). On January 26, 2012, he was sentenced to a below guidelines term of 220-months imprisonment (doc. 241), which will be discussed more thoroughly below. Defendant did not appeal, and counsel's alleged failure to file an appeal upon request is one of the three grounds for relief raised in the instant motion. Defendant

also contends that he was improperly designated a career offender, and that he is entitled to re-sentencing.

## LEGAL ANALYSIS

### General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; Thomas v. Crosby, 371 F.3d 782, 811 (11th Cir. 2004); United States v. Phillips, 225 F.3d 1198, 1199 (11th Cir. 2000). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981); Hidalgo v. United States, 138 F. App'x 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255

motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See* Nyhuis, 211 F.3d at 1344. With these standards in mind, the court will consider Defendant's claims for relief, although not in the order presented in his motion.

Defendant's Claims for Relief

    Application of Career Offender Enhancement

Defendant's second and third grounds for relief each relate to the application of the career offender enhancement. As his second ground for relief, Defendant contends that he should not have been designated as a career offender, because a prior conviction did not meet the criteria for the application of this enhancement, and he appears to rely on both new precedent and an argument that application of the enhancement was improper at the time (doc. 356-1 at 3). As his third ground for relief, Defendant asserts that he is entitled to re-sentencing without the enhancement. These claims could have been argued on direct appeal, and as such they are procedurally barred. *See* Nyhuis, *supra*. However, because Defendant also has claimed in Ground One of the instant motion that counsel was constitutionally ineffective for her failure to file an appeal, despite the court's conclusion with respect to Ground One, below, in an abundance of caution the court will consider the merits of Grounds Two and Three.

Defendant had a base offense level of 38, based on the quantity of cocaine base involved in the offense conduct (doc. 220, PSR at ¶ 56). His adjusted offense level was also 38, as there were

no applicable adjustments (PSR at ¶ 61). Section 4B1.1(a) of the United States Sentencing Guidelines provides that a defendant is a career offender if he was at least eighteen years old at the time he committed the offense of conviction, that the offense of conviction is either a crime of violence or a controlled substance offense, and defendant had "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The probation officer determined, and the district court agreed, that the twenty-one year old Defendant (*see* doc. 220, PSR at 4) had two prior qualifying convictions making him subject to the career offender enhancement. The first conviction was a third degree felony for resisting an officer with violence (PSR at ¶ 68). In that case, Defendant was adjudicated guilty and sentenced to eleven months and fifteen days in the county jail (*id.*). The second was burglary of an unoccupied dwelling, a second degree felony, for which he was sentenced to a term of 60 days in the county jail (PSR at ¶ 69).[1] Despite these two convictions, Defendant's adjusted offense level, as calculated in the PSR, did not change, because his adjusted offense level of 38 was higher than the offense level of 37 as reflected in § 4B1.1(b) (PSR at ¶ 62). After a three-level downward adjustment for acceptance of responsibility, Defendant's total offense level was 35 (PSR at ¶¶ 63, 64).

The career offender enhancement did affect Defendant's criminal history computation, however. He had a total of five criminal history points, which would have placed his criminal history category at III (PSR ¶ 70). Pursuant to § 4B1.1(b), his criminal history category became VI (*id.*).

Defendant objected to his classification as a career offender, noting that the allegedly qualifying offenses occurred when he was 18 years old, and within only a month of his adulthood (PSR at ¶ 124). He also argued that the offense reflected in paragraph 69 was not a proper basis for the application of the career offender provision in that it involved burglary of an unoccupied dwelling in violation of § 810.02(3)(b), Florida Statutes, and that statute "specifically excludes any burglary of a residence if the structure was occupied, involved a battery, or if it involved a weapon of any type" (*id.*).

---

[1] The PSR reflects that Defendant simultaneously received a twelve-month sentence after his nolo plea to criminal mischief, $200 and under (PSR at ¶ 69).

At sentencing, the district court adjusted Defendant's base offense level due to its finding at a co-defendant's sentencing the previous day that only 4.5 kilograms of drugs were involved in Defendant's offense conduct, although Defendant had admitted to being part of a conspiracy involving five or more kilograms (doc. 334 at 4–5). The court rejected Defendant's objections to the career offender enhancement, and after the quantity adjustment, Defendant had a revised total offense level of 34[2] and his criminal history category remained at VI (*id.* at 7). His advisory guidelines range was 262 to 327 months (*id.*).

The court sentenced Defendant to a below guidelines sentence of 220 months as to Counts One and Two to run concurrently (doc. 334 at 18). The court noted that this sentence was imposed in an effort to keep the sentences in the multi-defendant case somewhat in balance,[3] while giving consideration to Defendant's apparently violent streak (*id.*).

Defendant now contends that the career offender adjustment was improvidently applied, both because of the length of his terms of incarceration, and because his conviction for burglary of an unoccupied dwelling was not a "crime of violence" (doc. 356-1 at 3).[4] He also contends that he is entitled to relief due to the Supreme Court's decision in Carachuri-Rosendo v. Holder, 130 S.Ct. 2577 (2010).[5]

---

[2] This level (34) was based on Defendant's new adjusted offense level of 37 pursuant to U.S.S.G. § 4B1.1(b)(1), and a three-level downward adjustment for acceptance of responsibility (doc. 334 at 4–5). It was one level below the total offense level previously assessed.

[3] Counsel had argued for sentencing parity in her sentencing memorandum (doc. 232 at 4).

[4] The court notes that Defendant appears to make much of the fact that the two offenses in question occurred when he was eighteen years of age, and just barely a legal adult. These were not Defendant's first brushes with the legal system (*see* PSR ¶¶ 66, 67). Regardless, because Defendant was a legal adult when he was convicted of those offenses, his age has no bearing on the application of the career offender enhancement, and thus warrants no further discussion in this context (*see* U.S.S.G. § 4B1.2, Application Note 1 (noting that the two prior convictions must have been committed at age 18 or older)). If the two prior convictions had been more remote in time to the offense conduct (i.e., had the instant offense conduct occurred when Defendant was in his 30's or 40's) the district court might have placed greater weight on the argument that defendant was "only eighteen" when they occurred.

[5] The Government does not address Defendant's specific contention that his state court convictions were not properly used to support career offender status, but rather it contends merely

Defendant's first contention, that the length of his actual term of incarceration on the underlying offenses is relevant, is mistaken. "Prior felony conviction" is defined in the commentary to § 4B1.2 to mean a prior adult conviction for an offense "punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S.S.G. § 4B1.2, comment (n.1). Under Florida law, resisting an officer with violence is a third degree felony and burglary of an unoccupied dwelling is a second degree felony (PSR ¶¶ 68, 69). Also under Florida law, felonies of the second degree are punishable by a term of imprisonment not exceeding 15 years, and felonies of the third degree are punishable by a term of imprisonment not exceeding five years. *See* Fla. Stat. § 775.082(3)(c) and (d). Therefore, the length of Defendant's sentence in each case is irrelevant.

Next, Defendant asserts that his conviction for burglary of an unoccupied dwelling was not a crime of violence. Again, the commentary to section 4B1.2 forecloses this assertion. Application Note one defines a crime of violence as including "burglary of a dwelling" (as well as other offenses). U.S.S.G. 4B.1.2, comment (n.1). The commentary note does not distinguish between burglary of a dwelling that is occupied and one that is unoccupied, and therefore Defendant's burglary conviction qualified under the guidelines as a prior felony conviction for a crime of violence.

Defendant also contends that he is entitled to relief based on the United States Supreme Court's decision in <u>Carachuri-Rosendo v. Holder</u>, 130 S. Ct. 2577 (2010), which was decided before he was sentenced, as well as the Fourth Circuit's decision in <u>United States v. Simmons</u>, 649 F.3d 237 (4th Cir. 2011). In <u>Carachuri-Rosendo</u>, the Supreme Court considered the definition of aggravated felony under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and in so doing looked to the definition of felony contained in the Controlled Substances Act ("CSA") (21 U.S.C. § 801 *et seq.*). <u>Carachuri-Rosendo</u>, 130 S. Ct. at 2581. The Court ultimately determined that although defendant Carachuri could have been charged with a felony in federal court for the conduct in question, because he had actually been convicted only of a misdemeanor simple

---

that in light of his below-guidelines sentence, Defendant has failed to show how he has been prejudiced (doc. 359 at 18).

Case Nos.: 3:11cr37/LAC; 3:13cv57/LAC/EMT

possession offense under state law, the conviction could not be counted as a prior felony offense for purposed of INA. 130 S.Ct. at 2582–83, 2589). Similarly, in <u>Simmons</u>, the Fourth Circuit considered the definition of "felony drug offense" under the CSA, 21 U.S.C. § 841(b)(1)(B)(vii). It found that defendant Simmons' prior conviction for first time marijuana possession was not punishable by a term of imprisonment exceeding one year, and as such that it was not properly used to enhance his sentence under the CSA. <u>Simmons</u>, 649 F.3d at 239, 247–50. Each of these cases addressed not the sentencing guidelines, but the CSA. And, each is factually distinguishable from Defendant's case in that Defendant was actually convicted of a second and a third degree felony. Thus, neither <u>Carachuri-Rosendo</u> nor <u>Simmons</u> affords Defendant any relief.

In sum, the arguments raised in Defendant's second and third grounds for relief are not supported by applicable law. The career offender enhancement was properly applied in Defendant's case, and he is not entitled to relief.

<u>Failure to File an Appeal</u>

In Ground One, Defendant asserts that counsel was constitutionally ineffective because she failed to file an appeal after Defendant "specifically requested" that she do so (doc. 356 at 4). In the accompanying memorandum, Defendant states that he informed counsel that he wanted to proceed with an appeal as soon as the court recessed the sentencing hearing, and counsel told him at the time that "she would begin the appeal process of a Direct Appeal, but no Direct Appeal was ever taken" (*id.* at 14–15).

The Government's response to Defendant's motion includes the affidavit of former defense counsel Shelley Guy Reynolds, Esq. (doc. 359 at 21). In her affidavit, Ms. Reynolds recounts post-sentencing conversations and correspondence she had with Defendant and his mother regarding Defendant's sentence and the possibility of appeal (*id*. at 21). Ms. Reynolds indicates that on January 26, 2012, immediately after sentencing, Defendant and his mother were in agreement that he should not appeal his sentence (*id*.). By way of follow-up, counsel sent her client a letter the very next day, in which she explained his sentence and enclosed a copy of the judgment and sentence (*id*.). In that letter, she reminded Defendant of the fourteen-day deadline for filing an appeal, and she told him that he should contact her office immediately if he wanted her to file a notice of appeal (*id*. at 21, 23). Ms. Reynolds states that she did not receive either a written or oral request to file a

notice of appeal within that fourteen-day period (doc. 359 at 21). Almost two months later, on March 21, 2012, Defendant's mother, Angela Mims, contacted Ms. Reynolds to inquire as to whether there were any motions that Defendant could file to reduce his sentence (*id*). Counsel advised Ms. Mims that the time for filing an appeal had expired and that counsel's representation had thus concluded (*id*.). On April 2, 2012, Ms. Mims came to counsel's office and was given the same information (*id*.). Counsel states: "I am certain that Mr. Whitehurst never requested that I file a Notice of Appeal, neither in writing or [sic] verbally. My office made him aware that if he made such a request, I was appointed to his case for that purpose" (*id.*).[6]

The information provided by counsel contradicted Defendant's general assertion that he requested that Ms. Reynolds file an appeal of his below-guidelines sentence. Therefore, the court instructed Defendant that if he wished to pursue this claim, in his reply he must set forth in as much detail as possible and under penalty of perjury, *all* discussions (and attempted discussions) he had with counsel regarding an appeal (*see* doc. 360).[7] Defendant was also directed to identify the witnesses to these conversations, if any, and advised that failure to respond as directed could be construed as abandonment of this ground for relief.

In response to these instructions, Defendant's reply states only that he "orally requested for his attorney (Ms. Reynolds) to [file an appeal] on January 26, 2012 immediately after court when Ms. Reynolds met with [him]." (doc. 362 at 2). He further suggests that there was a strong basis for believing that he would have wanted to appeal due to his belief that he was actually innocent of the career offender enhancement, an assertion which, as discussed above, was mistaken. He does not identify any other conversations or communications that he had with Ms. Reynolds about the matter of an appeal, or indicate when or how he learned that she had not filed an appeal and what he did following the discovery of this information.

---

[6] The record also reflects that at sentencing the court specifically advised Defendant of his right to appeal, appointed Ms. Reynolds to assist him, and told Defendant that an appeal could be taken without cost to Defendant (doc. 334 at 20). It also recommended that notice of his desire to file an appeal be given in writing (*id.*).

[7] In the court's experience, requiring a supplemental sworn response often conserves judicial resources by narrowing the focus of an evidentiary hearing, if required, or in some instances, obviating the need for a hearing.

Case Nos.: 3:11cr37/LAC; 3:13cv57/LAC/EMT

The issue of counsel's duty and obligation with respect to his client's right to appeal has been well litigated. The Supreme Court has unequivocally stated that if a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (citing Rodriguez v. United States, 395 U.S. 327 (1969); Peguero v. United States, 526 U.S. 23, 28 (1999)). Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal. Flores-Ortega, 528 U.S. at 483; Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005). Counsel is not constitutionally ineffective for failing to file an appeal if she does not hear defendant's request to appeal, as appears to be the situation here (assuming the veracity of Defendant's assertion that he orally informed Ms. Reynolds to file an appeal immediately after sentencing). Parsons v. United States, 505 F.3d 797, 799 (8th Cir. 2007). In such a situation, the issue becomes one of consultation. *Id*. (citing Flores-Ortega, 528 U.S. at 478 (if defendant does not clearly request or instruct his trial attorney to appeal, issue is one of consultation )).

In cases where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, counsel's performance can still be constitutionally deficient if counsel failed in his or her duty to consult with the defendant regarding an appeal. Flores-Ortega, 528 U.S. at 478. Consultation involves "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. If counsel has consulted with the defendant, of course, the question of deficient performance is easily answered; Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *Id*. In this case, there is no specific evidence of "consultation" and therefore the court must consider whether the lack of consultation itself constitutes deficient performance. *Id.*; *see also* Thompson v. United States, 504 F.3d 1203, 1207 (11th Cir. 2007).

The Flores-Ortega Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal, and instead concluded that counsel's duty arises when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated

to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. In making this fact-specific determination, courts must take into account all the information counsel knew or should have known, and may consider factors such as whether the conviction follows a trial or a guilty plea (which is relevant both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings), whether there were nonfrivolous grounds for appeal, whether the defendant promptly expressed a desire to appeal, or whether there was a waiver of the right to appeal. Id. at 480, 485; Otero v. United States, 499 F.3d 1267, 1271 (11th Cir. 2007). To show prejudice in this context, a defendant must demonstrate that there is a reasonable probability that, but for counsel's failure to consult with the defendant about an appeal, she or he would have timely appealed. Flores Ortega, 528 U.S. at 484; Thompson, 504 F.3d at 1207. This determination is made without regard to the merits of the putative appeal. Flores-Ortega, 528 U.S. at 485–86; Thompson, 504 F.3d at 1208; Gomez-Diaz, 433 F.3d at 793.

Thus, although consultation is not always required, the Supreme Court expects lower courts to find in the vast majority of cases that counsel had a duty to consult with the defendant regarding an appeal. Flores-Ortega, 528 U.S. at 481; *see, e.g,* Thompson, 504 F.3d at 1207 (counsel had a duty to consult with defendant who was dissatisfied with a perceived disparate sentence and who had inquired with counsel about right of appeal); Speight v. United States, 427 F. App'x 731 (11th Cir. 2011) (counsel had a constitutional obligation to consult with defendant who received 68 years sentence for her first criminal episode, entered a blind guilty plea with no waiver, and who had issues of arguable merit to appeal); *cf.* Devine v. United States, 520 F.3d 1286 (11th Cir. 2008) (counsel had no affirmative duty to consult with defendant about an appeal where defendant was sentenced at the bottom of the Sentencing Guidelines range after pleading guilty and waiving right to appeal); Otero v. United States, 499 F.3d 1267 (11th Cir. 2007) (counsel had no obligation to consult with defendant who, after signing a plea agreement with an appeal-waiver provision, received sentence at low end of predicted guidelines range and had not expressed desire to appeal).

Generally, in a case in which Defendant and counsel have filed conflicting affidavits, an evidentiary hearing is necessary to resolve the conflict. In this case, however, the court will assume for the purpose of this recommendation that Defendant's assertion that he requested that counsel file

an appeal following his sentencing is true. And, even assuming the truth of this assertion, Defendant is not entitled to relief.

Defendant states that after sentencing, he asked counsel to file an appeal (docs. 356-1 at 3; 362 at 2). Defendant has clarified that this request, made on January 26, 2012, was the only time he communicated with counsel about the appeal. It is clear from the contents of counsel's affidavit (in which she expresses her certainty that Defendant never requested that she file a notice of appeal) and from the actions she took on the day after Defendant's sentencing, that she did not hear or understand Defendant's request. *See* Parsons, 505 F.3d at 798–99. If counsel had heard Defendant's request that she file an appeal, the contents of her follow-up letter to Defendant the very next day, on July 27, 2012, would have been nonsensical (doc. 359 at 23). In this letter, Ms. Reynolds explained how the court had calculated the advisory guidelines sentencing range of 262–327 months, and she noted that Defendant had received a below-guidelines sentence of 220 months over the Government's objection (*id*). She also reminded him, in bold type "**You have fourteen (14) days to appeal, please notify me in writing if you want to file the appeal**" (*id*.). And in the final paragraph of the letter she reiterated to Defendant "Should you wish for me to enter a Notice of Appeal, please contact my office immediately" (*id*.). This letter from counsel placed Defendant on notice that she did not file an appeal, but was willing to do so upon his request.

In his reply, Defendant neither confirms nor denies receipt of counsel's letter. He does argue, in apparent response to the contents of the letter, that there is no law requiring that a request that counsel file a notice of appeal be in writing (doc. 362 at 1). The district judge specifically recommended at sentencing that any request for an appeal be made in writing (doc. 334 at 20), but Defendant is correct that a written request is not required. Conversely, documenting a defendant's decision not to appeal, through a written waiver or otherwise, also is not legally required. In either event, Defendant does not contend that he had any further communication with counsel about filing an appeal either in response to her letter of January 27, 2012, or otherwise. Having received no response to her letter or any other communication from Defendant regarding the filing of an appeal, counsel cannot be said to have acted unreasonably in not filing a notice of appeal.[8]

---

[8] Counsel's position that Defendant and his mother were in agreement after sentencing that no appeal would be filed is further supported by the fact that Defendant's mother contacted counsel

There is no record evidence that counsel consulted with Defendant concerning an appeal. Counsel is derelict in her duty if: "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 480. As noted above, this is a fact-specific determination. Because there is no record evidence, short of Defendant's assertion that he told counsel he wished to appeal, that Defendant "reasonably demonstrated to counsel that he was interested in appealing," the court's inquiry focuses on the first prong.

Defendant entered a plea of guilty without the benefit of a plea and cooperation agreement.[9] Thus, although there was no express waiver of his right to an appeal as there was in Parsons, the scope of appealable issues was reduced due to the mere fact of the guilty plea. If there was a prompt expression of Defendant's desire to appeal, as discussed above, it went unheard by counsel, who governed herself in accordance with the belief that Defendant had not expressed an interest in filing an appeal. Finally, there do not appear to have been any meritorious or non-frivolous grounds for appeal. The issue of drug weight, which was raised in the defense sentencing memorandum (doc. 232 at 2–3), was resolved favorably to Defendant, as was the defense request for a below guidelines sentence in the interest of parity (*id.* at 4–5, 7–12). The only remaining issue identified in the sentencing memorandum and in the instant motion as a potential appellate issue would have been a challenge to the application of the career offender enhancement. And, as explained above, the career offender enhancement was properly applied and a challenge thereto is substantively without merit.

Conversely, an appeal of Defendant's sentence was potentially risky. Defendant received a sentence that was 42 months below the applicable guidelines range, even without the benefit of

---

in March and again in April of 2012 to see if there were any other motions Defendant could file to reduce his sentence (doc. 359 at 21). Such communication would have been unnecessary had an appeal been filed.

[9] The plea proceeding was not transcribed, so no further detail is available.

a substantial assistance motion.[10] The Government objected to the downward departure (doc. 334 at 19). Therefore, if the appellate court had found error in the district court's decision to impose a sentence significantly below the applicable guidelines range and remanded the case for resentencing, Defendant faced the risk of a guidelines sentence that could have been between 42 and 107 months greater than the sentence he actually received.

Defendant recites the "magic language" that but for counsel's failure, he would have timely appealed. Flores-Ortega, 528 U.S. at 484; Thompson, 504 F.3d at 1208. However, in light of the foregoing analysis, the court finds Defendant's conclusory assertion is insufficient to support his claim. Under the circumstances of this case, counsel was not constitutionally ineffective either for her failure to file an appeal or her failure to consult with Defendant regarding an appeal. Defendant is not entitled to relief.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (doc. 356) be **DENIED**.

---

[10] The record does not reflect any efforts by Defendant to cooperate with law enforcement in an attempt to reduce his sentence either prior to or after his conviction.

Case Nos.: 3:11cr37/LAC; 3:13cv57/LAC/EMT

2. A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 19th day of June 2013.

> /s/ *Elizabeth M. Timothy*
> **ELIZABETH M. TIMOTHY**
> **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**